THE LONG BELL LUMBER COMPANY v. H. B. MARTIN.

(Filed July 6, 1901.)

1. **PONCA CITY IMPROVEMENT COMPANY—Acts of Void.** The lands of the Cherokee outlet were opened on September 16, 1893, to settlement and private acquisition under the homestead laws of the United States. Four days thereafter, on the 20th of September various settlers, under the assumed organization of the Ponca Townsite company, occupied the quarter section of land including the lots involved in this controversy, and undertook to divide it into lots, blocks, streets and alleys. No title or right was ever acquired from the government by either the said company or the settlers and claimants thereunder. All the acts of the said Ponca Townsite company and of the settlers and claimants under it, were wholly without authority and void, as against public policy.

2. **OCCUPANCY—Does not Constitute Adverse Title, When.** Such an appropriation and occupancy does not constitute such an adverse title to land as will entitle the occupant to any legal protection or right, under section 6137 of the Statutes of 1893, which provides that: "Every grant of real property, other than that made by the territory, or under judicial sale, is void, if at the time of the delivery thereof, said property is in the actual possession of the person claiming under a title adverse to that of the grantor."

3. **OBJECTIONS—Sufficient, When.** A deed introduced by the defendant in error as exhibiting one step in his claim of title, purporting upon its face to be made by Harry C. C. Stiles, was in fact executed by Daniel F. Stiles, as "attorney in fact." The introduction was objected to generally at the time, upon the ground of "incom-

petency, irrelevancy, and immateriality." But the objection thus made in general terms was not sufficient to call the attention of the trial court to the objection argued here; that is "that no authority was shown in Daniel F. Stiles, to execute the said deed "as attorney in fact," and since the attention of the court was not called to the point below, the objection will not be sustained here, having been specifically raised for the first time in this court.

4. TRESPASS—Damages for. The defendant is a mere trespasser. The relation of landlord and tenant never existed in the case. The case is one of occupation of land without color of title, but that fact would not prevent the plaintiff from recovering damages in this action simply because it was averred in the petition that the measure of his damages is the value of the use and occupancy of the premises during the period sued for, since it has been declared in this court, that "the rental value of the premises during the time the party is forcibly and unlawfully kept out of possession, is the proper measure of damages."

(Syllabus by the Court.)

*Error from the District Court of Kay County; before Bayard T. Hainer, Trial Judge.*

*Henry S. Johnson and W. R. Cowley,* for plaintiff in error.

*H. B. Martin and James B. Diggs,* for defendant in error.

### STATEMENT OF FACTS.

The contention in this case is for the recovery of damages for the use and occupation of a portion of the northwest quarter of section twenty-seven, township twenty-six, north of range two, in Kay county, a portion of the territory known as the Cherokee outlet and described in the pleadings, proceedings and testimony as lots numbered 17 to 24, inclusive in block 71 in Ponca City.

It appeared in evidence that on the 20th day of September, 1893, four days after the opening of the Cherokee outlet to settlement, many persons, including one F. J. Schwartz, entered upon the quarter section of land referred to, staked out the lots thereupon, participated in the organization of the so-called "Ponca Townsite Company," elected one B. S. Barnes to be president thereof, and that thereafter the company proceeded to approprate the said quarter section of land and subdivide it into blocks, lots, streets and alleys, and adopted rules and by-laws by which it undertook to regulate the local government of the town so undertaken to be formed.

In compliance with the rules of this organization, Schwartz paid to Barnes as president of the townsite company, the sum of two ($2.00) dollars per lot for each of the said lots, and made subsequent additional payments under assessments levied by the townsite company. Schwartz entered upon, accepted and improved the lots, and subsequently assigned them to one A. S. Parks, together with a certificate he had received for them, in which the Ponca Townsite company, by its president, B. S. Barnes, had undertaken to "award" the said lots to Schwartz. Afterward, and before the beginning of the action, Parks assigned "all my right, title and interest to the Long Bell lumber company," the plaintiff in error, which has continued to occupy them to the present time. Whatever right exists in the plaintiff in error, is derived from the existence of the foregoing facts.

The quarter section of land of which the lots in question form a part was upon the 23d day of July, 1895, granted by the United States to Daniel F. Stiles, and upon the 24th day of July, 1895, it was granted by Daniel F. Stiles and his wife,

to Harry C. C. Stiles, and upon the 22nd day of August, 1895, it was granted by Harry C. C. Stiles to B. S. Barnes and John W. Dalton; on the 24th day of September, 1896, the lots were granted by Barnes and wife and Dalton to the plaintiff, H. B. Martin, by a deed of general warranty, acknowledged before a justice of the peace of Kay county; upon the 24th day of August, 1895, the lots in question were again granted by Barnes and wife and Dalton to Hiram F. Hatch, and on the 17th day of September, 1896, Hatch and his wife "released and quit claimed" them unto H. B. Martin, defendant in error here.

The petition averred for the first cause of action that upon the first day of June, 1895, Barnes and Dalton were in possession and control of the lots, and agreed with the defendant to assign the use and occupation of them to defendant, and that the use and occupation was of the value of thirty dollars per month. And that afterward and at the time of making the said warranty deed to Martin, that Barnes and Dalton assigned the right of action for the recovery for said use and occupation to the plaintiff, Martin, for the period from the 1st day of June, 1895, to the 17th day of September, 1896, and that the sum amounted for the total period to the sum of $465, which remained unpaid.

For the second cause of action, Martin averred that the Long Bell lumber company was on the 26th day of September, 1896, in possession, use and occupancy of the said lots, and that Barnes and Dalton upon that day, for a valuable consideration, granted the lots to the plaintiff by warranty deed, and that the defendant continued in the use and occupancy thereof with the assent of the plaintiff, given on the 26th day of September, 1896, by which it was agreed to surrender and deliver

to the plaintiff the property on the 1st of November, 1896, but that the defendant wholly failed and refused to surrender possession of them at that time, and still continues to do so to the injury of the plaintiff in the sum of one hundred and five dollars, for which the plaintiff prayed judgment, as well as for double rental value of the premises during the time the same has been wilfully withheld from the plaintiff.

The notice of the defendant company to quit the premises had been duly served upon the plaintiff, to take effect "before the 1st day of November, 1896, and unless you had so removed from said premises before said day, you will be held for costs and damages."

The defendant company answered, denying all the allegations of the plaintiff's petition, and by averment's constituting a cross petition, set up that the quarter section of land had been occupied on September 20, 1893, by Schwartz, the assignor of the defendant, as part of a townsite; that the "Ponca Townsite Company," had platted the land into lots and blocks, and that by virtue of some conveyances or assignments to the "Ponca Townsite Company," the defendant was the owner and in possession of the lots.

It averred the payment by Schwartz of two dollars per lot, and other sums for the improvement of the land and acquisition of the title to be made to the townsite company, and that by a succession of assignments from Schwartz to Parks and from Parks to itself, it became the owner of the lots and entitled to the possession.

A demurrer was filed by the plaintiff to the averment consisting of a cross petition of the defendant company, which

was by the court sustained, and the case went to trial to the jury upon the averments of the petition and a general and special denial thereof; by the defendant company.

The first count of the petition having been dismissed by the plaintiff, the jury rendered a verdict for the plaintiff on the second cause of action and, after a motion for a new trial was filed, presented and overruled, judgment was entered upon the verdict, and from this judgment this appeal was taken.

Opinion of the court by

McATEE, J.:    The lands of the Cherokee outlet, of which these lots form a part, were thrown open to settlement by the general government upon the 16th day of September, 1893.    The quarter section of land in which they are included, was by it granted to Daniel F. Stiles, and by successive conveyances from Stiles through Harry C. C. Stiles and Barnes and Dalton by warranty deed to H. B. Martin, and by quit claim deed through Hatch and his wife to Martin.    The defendant is without any interest or claim to the property whatever.

The occupation of the quarter section of land on the 20th day of September, 1893, or four days after the dedication of the lands of the outlet to settlement by the government, by various settlers, under the assumed and pretended organization of the "Ponca Townsite Company," was invalid.    The defendant company does not pretend to have any other claim to the lots than that which it is entitled to as a trespasser deriving successive rights and privileges from antecedent trespassers of the same general character.

It is contended by the plaintiff in error that the court erred in sustaining the motion of the defendant in error to strike out and take from the jury that portion of the statement made by the attorney for the defendant in error, in opening the case to the jury, which pertains to "all transactions prior to the 1st day of July, 1895," that is, to the testimony relative to the circumstances under which the plaintiff in error got possession of the land in controversy.

The statement withdrawn from the jury by the court included the particulars of the alleged contract between the plaintiff in error company, and the "Ponca Townsite Company." It was entirely immaterial, and calculated to mislead the jury.

The Ponca Townsite company, in undertaking, as the defendant undertook to show, that it would secure a quarter section of land including he lots in controversy, to be set out as a townsite, and be divided into lots, blocks, streets and alleys, was wholly without authority, and was, if the statement was true, an undertaking to do a thing which was void as against public policy.

The land was at that time dedicated by the government to use as a homestead, and the Ponca Townsite company had no right or authority whatever in the premises. All such attempts are in contravention of public policy, and were properly withdrawn from the jury, since they in no wise tended to constitute a defense in this action.

It is also contended that the court erred in admitting evidence which was incompetent, irrelevant and immaterial, and

in contravention of section 6137 of the Statutes of 1893, which provides that: "Every grant of real property, other than that made by the territory, or under judicial sale, is void, if at the time of the delivery thereof said property is in the actual possession of the person claiming under the title adverse to that of the grantor."

This provision of the statute does not have the effect contended for, since the defendant company does not set up or pretend either in the pleadings or in the evidence that it holds under any "title adverse" to that of the grantor, Daniel F. Stiles.

The certified copy of the record of the deed from Harry C. C. Stiles to Barnes and Dalton, conveying the property in question, was offered in evidence and objected to "as being incompetent, irrelevant and immaterial." No objection was specifically stated at the time, but it is now contended that the power of attorney under which Daniel F. Stiles acted in undertaking to execute the deed was not shown. The deed purported upon its face to be made by Harry C. C. Stiles, and was in fact executed in the name of Harry C. C. Stiles by Daniel F. Stiles "as attorney in fact." We think that the general objection of incompetency, irrelevancy and immateriality did not reach the point, since the attention of the trial court was not specifically called to the point now argued, and the point was indeed specifically raised for the first time in this court, in the brief of the plaintiff in error.

It has in various cases been held by the supreme court of Kansas, that:

"If a party fails to object to the introduction of an instrument on the ground that its execution is not proven, he cannot thereafter raise the question." (*Botkin v. Livingston,* 16 Kans. 39.)

And that:

"When offered, the record was objected to 'as being incompetent.' * * * Was this objection sufficient to raise the question now presented? (That of the authentication of a record). It should perhaps be marked that the views we have expressed are in reference to cases in which the defect could have been obviated by further proof." (*K. P. Ry. v. Cutter,* 19 Kans. 89.)

And that:

"The objection must be so specific that the court may know from the objection what the question is it is called upon to decide; and unless the objection is thus specific, we cannot assume that the court decided some particular question which it might or might not have decided, and that it erred in its decision. Error can never be presumed." (*Humphrey v. Collins,* 23 Kans. 390.)

And that:

"The objection to the introduction of the letter was because it was 'incompetent and irrelevant.' This objection does not reach the objection counsel seek to raise now. (The contention of counsel was that it could only be made competent by proof of the genuineness of the signature.) No objection was there (in the court below) interposed that sufficient preliminary proof had not been offered to admit the letter in evidence." (*Daugherty v. Fowler,* 44 Kans. 628.)

These cases sufficiently fortify the proposition, as stated in the text of the 8th Ency. of Pleading and Practice, 252,

that the particular point should be specified, and that it is too late to raise the point upon motion for new trial, or after verdict.

It is also contended that the deed from Barnes *et al.* to Martin is in violation of section 2025 of the Statutes of 1893, which provides that:

"Every person who takes any conveyance of lots or tenements, or of any interest or estate therein, from any person not being in the possesssion thereof, while said lands or tenements are the subject of controversy, by suit in any court, knowing the pendency of such suit, and that the grantor was not in possession of said lands or tenements, is guilty of a misdemeanor."

This statute does not undertake to declare that the conveyance of the lands, tenements or interests shall not be effective, nor is there anything in the statute which would preclude the effect of such conveyance, or that Martin had any knowledge of the pendency of any suit in any court touching the property, nor is there any proof in the case that the lands in question were the subject of any such suit.

It is contended by the plaintiff in error that the "evidence does not prove any cause of action for the plaintiff and against the defendant."

The first cause of action in which the plaintiff sought to recover for the use and occupancy of the lots from the first day of June, 1895, to the 17th day of September, 1896, was abandoned and dismissed, and the question as to the plaintiff's right to recover for that period was not submitted to the jury, nor taken into consideration.

The recovery was had upon the second cause of action which alleges that Barnes and Dalton, who held the title, executed a warranty deed for the lots to the plaintiff; that the defendant was on the 17th day of September, 1896, in the possession, use and occupancy of the lots, and that their reasonable value was thirty dollars per month.

The petition avers a demand and a refusal to pay, and these were all the averments necessary to entitle the plaintiff to recover. The plaintiff is not asking for the recovery of rent; he is asking for the value for the use and occupancy of his property upon the express averment that the plaintiff "wilfully withholds the property from the possession" of the plaintiff, to his "injury and damage."

All the facts of the case go to show that the defendant is a mere trespasser, and he is not entitled to exemption from a recovery in damages even if he avers in his petition that the measure of his damages is the value of the use and occupancy of the premises during the period sued for.

The relation of the landlord and tenant never existed in the case. The case is one of occupation of land without color of title, but that fact would not prevent the plaintiff from recovering damages in this action even if he had averred that the rental value of the premises amounted to a certain specific sum, since it has been expressly declared by this court that "the rental value of the premises during the time the party is forcibly and unlawfully kept out of the possession, is the proper measure of damages." (*Oklahoma City v. Hill Bros.* 6 Okla. 115.)

The evidence offered to the jury is sufficient to prove the cause of action in favor of the plaintiff and against the defendant.

It is again contended by the plaintiff in error that the "court erred in excluding from the jury the testimony offered by the plaintiff in error, which was relevant to the issues in the case."

The errors complained of are the rejection of the depositions of Schwartz, Parks and R. A. Long, president of the defendant company. This testimony thus offered related to the circumstances under which the defendant company had gone into the occupancy of the lots in dispute, in violation of the homestead laws of the United States, and was properly excluded from the jury. We have examined the cause, including instructions given by the court, and find no error in them.

The judgment of the court below is affirmed.

Hainer, J., who presided in the court below, not sitting; all the other Justices concurring.